## DE RHAM *a.* GROVE.

*Supreme Court, First District; Before Hon. Joseph S. Bos-worth, Referee, May,* 1864.

MEASURE OF DAMAGES ON FOREIGN BILL.—RATE OF EXCHANGE.—MONEY OF ACCOUNT.—LEGAL TENDER CURRENCY.

The measure of damages upon the protest, for non-acceptance, of a bill of exchange drawn and negotiated in this State, and payable in England, and for a sum expressed in the currency of that country, is the face of the bill, adding the rate of exchange, and adding, to the total, ten per cent. damages, and interest upon both the debt and the damages.

The principal sum is to be ascertained by multiplying the sum expressed in sterling currency, by 4.4444, and multiplying the product by the figures which, according to the usage of business, designate the rate of exchange, as the same stood at the time of protest for non-acceptance.

There being, during the suspension of specie payments, a difference in value between coin and legal tender notes, the lawful money of the United States, and consequently two rates of exchange, one for the legal tender currency, and the other for coin; the computation is to be made according to the current rate of exchange *in currency*, not according to the current rate of exchange in coin.

Trial before a referee.

Henry C. De Rham and others brought two actions against William Grove and Frederick Allison, to recover upon two foreign bills of exchange drawn by the latter, and protested for non-acceptance.

The material facts are stated in the opinion.

*William Betts,* for the plaintiffs, insisted that they were entitled to recover the amount necessary to enable them to replace the money in England. (Citing Grant *a.* Healy, 3 *Sumn. R.,* 523; 3 *Rev. Stat.,* 5 ed., 70, § 18–22.) And that the recovery should be for the amount computed in currency or legal tender notes, not in coin, which was at a premium above the lawful money of the United States.

*Titus B. Eldridge,* for the defendants, insisted that the acts

of Congress of 1799 and 1842, fixed the value of the pound sterling, and that the recovery must be accordingly. (*Story on Prom. Notes*, §§ 396, 399.)

J. S. BOSWORTH, *Referee.*—These suits are brought against the defendants, as drawers of two bills of exchange, both drawn and negotiated in New York: one is drawn on a house in London, for the sum of "nineteen hundred and seventy-six pounds, five shillings and sixpence sterling." The other is drawn on a house in Liverpool, payable in London, for "the sum of thirteen hundred and thirty-nine pounds four shillings and three pence sterling."

Both were duly protested for non-acceptance, and notice thereof was duly given to the drawers, Nov. 17, 1863.

Both were purchased in New York by the plaintiffs, and paid for by them in currency, that is, legal tender notes, at the then current rate of exchange, viz., $1.68 in currency; it being $1.10 in *coin*.

The current rate of exchange on bills drawn in New York on London, at the time the said bills were *protested* for non-acceptance, was $1.68 in currency; that is, legal tender notes; and $1.10 in coin. By the uniform course of business among merchants and bankers, the value of exchange at any given rate is ascertained by estimating the par value of exchange at $4.4444 for the pound sterling, and multiplying this product by the given *rate*. This is the method to ascertain the amount to be *paid for the pound sterling*, whatever the *rate of exchange*, on purchasing a bill, or taking it up when protested.

The practical question is, what is the measure of damages in these cases.

In Hendricks a. Franklin (4 *J. R.*, 119), decided in 1809, it was held (before the subject was regulated by statute) that the sum recoverable was the contents of the bill, estimated at the par of exchange, and 20 per cent. damages, with interest, and that no recovery could be had for the difference between the price of bills at the time the bill was returned and the time it was drawn.

In Graves a. Dash (12 *J. R.*, 17), Hendricks a. Franklin was overruled by the reversal of the judgment in the principal case which had been decided in conformity with it; and it was held

that the measure of damages was the contents of the bill, *at the rate of exchange*, or price of bills on *England*, at the time of the notice of the dishonor of the bill, together with 20 per cent. damages and interest.

The same rule was declared in Denston *a.* Henderson (13 *J. R.*, 322), and that case was decided in conformity with it.

This subject is now regulated in this State by statute, which enacts, with reference to bills of exchange drawn or negotiated within this State, that, " If the contents of such bill be expressed in the money of account or currency of *any foreign country*, then the amount due, exclusive of the damages payable thereon, shall be ascertained and determined by the *rate of exchange*, or the *value of such foreign currency*, at the time of the demand of payment." (1 *Rev. Stat.*, 770, § 21; same stat., 5 ed., vol. 3, p. 70.) " Where a bill of exchange shall be protested for non-acceptance, the *same rate of damages* shall be allowed on the protest for non-acceptance, as provided in the *four last sections ;* and shall be in lieu of interest, charges of protest, and all other charges incurred previous to, and at the time of giving notice of non-acceptance; but the holder shall be entitled to recover interest upon the aggregate amount of the principal sum specified in the bill and of the damages thereon, from the time at which notice of protest for non-acceptance shall have been given." (*Ib.*, § 22.) " The damages allowed by this title shall be recovered only by the holder of a bill who shall have purchased the same, or some interest therein, for a valuable consideration." (*Ib.*, 71, § 23.) The " rate of damages" provided in " the four last sections," immediately preceding said section twenty-two, exclusive of the provision in section twenty-one, is, " If such bill shall have been drawn upon any person or persons at any port or place in Europe, ten dollars upon the hundred, upon the principal sum specified in such bill." (*Ib.*, 70, § 18, subd. 4). Section twenty-one prescribes the mode of ascertaining and expressing in *Federal currency*, " the amount of the principal sum specified in the bill."

This statute seems to have been constructed and enacted with a view to give effect to the rule that the holder of a bill drawn in this State upon any port or place in Europe, and which has been protested for non-acceptance or non-payment, " is entitled to have an equal amount to what he must pay, in order to

*remit* the debt to the place where it is payable. He ought to have just as much allowed him where he sues, as he could have had if the contract had been duly performed. He ought to have the rate of exchange allowed, if the exchange be above par, and a proportionable deduction made, if the exchange be below par, in order to have his money replaced, in England, at exactly the amount he would have been entitled to receive on a suit there." (3 *Kent's Com.*, 117, *note* (a); *Story on Bills*, §§ 399, 400; 2 *Phillips' Ev.*, § 261.) By this rule the amount due on the larger bill (exclusive of damages), ascertained and determined by the rate of exchange, is expressed by

£1976 5*s*. 6*d*. × $4.4444 × $1.68, which equals, $14,756.039.
Ten per cent. of the sum specified in the bill,
thus ascertained and determined, is . . . . 1,475.603.
The interest on these two sums for 6 months, . 568.107.

Making the sum to be recovered, . . . . $16,799.749.

The same process shows the amount recoverable on the other bill to be $11,384.263.

If legal tender notes and coin, expressing on their face the same sum, were, practically, of equivalent value, no question would be made (on the facts as found) that the plaintiffs are entitled to recover the sums above stated.

Legal tender notes must be received in satisfaction of debts, at the sums expressed on their face. The creditor cannot demand any thing actually better, and the debtor is not obliged to pay in any thing better. In *law*, there is no better currency. They are a legal tender in payment of all debts between citizens, and are *lawful money of the United States*.

The amount due on, or the value of these bills, at the true rate of exchange, when paid for or payable after protest for non-acceptance, in legal tender notes, or, in other words, in lawful money of the United States, is as above stated. The proper rule, and that expressed in the statute, in cases of bills drawn and negotiated here, on London, and payable in English currency, and sued here, being to allow that sum, in the lawful currency of the country, which approximates most nearly to the amount to which the holder is entitled in the country where the debt is payable; effect is given to it and justice done by rendering judgment according to the results above stated.

De Rham *a.* Grove.

The holder must pay all he recovers, excepting the ten per cent. allowed for damages (the rate of exchange remaining the same), to purchase other bills for the same amounts. The statute of the United States of March 2, 1799, and of July 27, 1842, fixing the value of foreign coins and money, do not affect the question. Whatever may, by force of those statutes, be the legal value of the pound sterling for any, or all purposes, the *fact* remains that the *value* of *exchange* (or the *sum to which it amounts*), above par, when expressed in Federal currency, is ascertained by multiplying such *rate* by $4.4444, to arrive at the value of the pounds; and the sum which expresses this value, is to be multiplied by the number of pounds sterling specified in the bill. Assuming, therefore, that the value of the pound sterling here is $4.84, or any other sum, yet inasmuch as the phrase "*the rate of exchange*" expresses a sum to *be ascertained as above stated*, that mode of ascertaining its value or *amount*, must be pursued, to reach a result conforming to what is *meant* by the expression indicating a given or specified "rate of exchange."

I think the plaintiffs entitled, on the facts found, to judgments for the sums above stated.

But these sums exceed the amounts named in the summons and demanded in the prayers for judgment. The plaintiffs, if the views above stated are correct, are entitled to judgment for the amounts specified in the summons and in the prayers for judgment, and I therefore report in favor of the plaintiffs, in each case, the amount for which the summons states judgment will be taken, the same amount being named in the prayer for judgment.